**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Timothy James,** | ) | **CASE NO. 1:13 CV 2008** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Federal Express Corporation,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 20).  This case arises out of plaintiff's termination of employment with defendant. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Timothy James, proceeding *pro se*, filed this Complaint against defendant Federal Express Corporation. Plaintiff alleges that his April 12, 2012 termination was a result of race and age discrimination.

Plaintiff was hired by defendant in November 1986.  (pltf. depo. 31 and Ex. 27)

1

Defendant has an Acceptable Conduct Policy in its Employee Handbook and People Manual which states that deliberate falsification of company records, including package delivery records, could result in severe disciplinary action including termination.  The policy also states that an employee would be terminated for falsification if the employee had received a prior disciplinary letter for falsification within the previous five years.  The Three Rivers District Guidelines also cautioned that falsification of company documents, including delivery records, could result in termination. (pltf. depo. Exs. 7, 8) Plaintiff received a copy of the handbook and guidelines. (pltf. depo. 31-35 and Ex. 8)

Mark Smith, the Senior Manager at defendant's Bedford Heights facility where plaintiff was employed, states the following through his declaration.  Defendant is an express transportation and package delivery company based in Memphis, Tennessee.  Smith has supervision over six Operations Managers, including Jeff Clow who directly supervised plaintiff. Richard Connolly was the Managing Director of the Three Rivers District which included the Bedford Heights facility.  Plaintiff was a Courier whose general job duty was to deliver packages to customers during the a.m. shift.  In the performance of his duties, plaintiff used a Powerpad, which is an electronic package scanning device that is used to track customer packages throughout the delivery process. The information captured by the Powerpad provides real-time package tracking information for FedEx and its customers.  FedEx also uses this information to follow the progress of its Couriers, ensure on-time deliveries, evaluate Couriers' on-road performance, and evaluate route efficiency.

In April 2012, defendant investigated plaintiff for suspected falsification of delivery records. On the morning of April 2, 2012, in order to balance the routes and have the priority 1

packages delivered by 10:30 a.m., Clow instructed plaintiff to give some of his Priority 1 packages to another Courier, Troy Smith, who had been finishing his route early during that time period. Plaintiff gave Smith three of his delivery stops. On that day, about 10:05 a.m., Clow observed that plaintiff still had several Priority 1 packages to deliver. Clow sent plaintiff a message through the Powerpad which stated, "Hi Tim... Hey, how many P-1 do u have left? U R showing 22 of 37... Troy is done... He clearly did not take enough... We have 20 min to make sve [service]...Jeff"

As part of the Commitment to On Road Excellence (CORE), the Operations Managers review delivery records for drivers in their work groups, including GAP Reports which are reports of package deliveries with corresponding addresses and times of deliveries. Through this process, Clow reviewed plaintiff's delivery records for that day. According to plaintiff's GAP Report, plaintiff purportedly delivered packages to seven different customers within a five minute time frame between 10:17 a.m. and 10:22 a.m. According to the address of those seven stops, the delivery of these packages accounted for 10.96 miles in driving distances during that five minute period of time. Additionally, the delivery records reflected that plaintiff purportedly delivered packages at the same time (10:19 a.m.) to two different addresses that were one mile apart. The delivery records also reflected that plaintiff had an approximate ten minute period of inactivity after the Priority 1 deadline of 10:30 a.m.

After reviewing this information, Jeff Clow and Mark Smith determined that an investigation was warranted. On April 5, Clow provided the Gap Report to plaintiff and questioned him about his deliveries on April 2. Plaintiff provided a written statement in which he claims that he sped up after receiving Clow's Powerpad message, and that he was a fast

3

worker and has done things considered humanly impossible before. Based on the delivery records and plaintiff's written statement, Clow suspended plaintiff with pay on April 5, pending completion of the investigation.

Clow and Smith then reviewed plaintiff's Gap Reports and Clow took two test drives of plaintiff's route in the same sequence as recorded in the report. Based on the test drives, the driving time alone for these stops took approximately 28 minutes, not including time spent parking, sorting and selecting packages, exiting the truck, approaching the location, and returning to the truck. Based on this review, Clow and Smith determined that it was physically impossible to deliver the packages in accordance with plaintiff's Gap Report. On April 12, Clow met with plaintiff and gave him another opportunity to explain the delivery records. Clow provided plaintiff with a map so that he could demonstrate the route he drove to make the stops in his report. Plaintiff did not provide specifics, but reiterated that he sped up to timely complete the deliveries.

As a result of the investigation, Clow and Smith concluded that plaintiff deliberately falsified his delivery records by entering "Proof of Delivery" scans without being physically at the individual customer locations to avoid Priority 1 service failures, and then delivering the packages after the 10:30 deadline. Clow and Smith conferred with the Human Resources Advisor, Terrance Lawler, regarding the results of the investigation. All three concluded that plaintiff's misconduct warranted termination. Plaintiff was terminated on April 12, 2012. (Smith decl)

This matter is before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

Defendant moves for summary judgment on the two remaining claims asserted in plaintiff's Complaint: Title VII and ADEA violations based on the April 12 termination.

**(1) Title VII (Race)**

Title VII provides that it shall be unlawful for an employer to discharge any individual because of his race.  42 U.S.C. § 2000e–2(a)(1). The burden shifting analysis employed in such claims in the absence of direct evidence of discrimination is well-settled.  Plaintiff must first satisfy his burden of establishing a prima facie case by showing that 1) he is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class. *Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) (citations omitted).

If defendant asserts a legitimate, nondiscriminatory reason for its action, plaintiff must show that it was actually a pretext for unlawful discrimination.  To establish pretext, plaintiff must show that the defendant's articulated reason: (1) lacks a basis in fact, (2) did not actually motivate the defendant's actions, or (3) was insufficient to motivate the defendant's actions. *Carroll v. Ohio Dept. of Administrative Services*, 555 Fed.Appx. 512 (6th Cir. 2014) (citations

omitted).

Defendant concedes all elements of the prima facie case except that plaintiff was treated differently than a similarly situated employee outside the protected class. Terrance Lawler, defendant's Human Resources Advisor, declares that plaintiff was terminated in April 2012 following the investigation for falsification of delivery records. Defendant determined that plaintiff deliberately falsified delivery records in violation of FedEx's Acceptable Conduct Policy. Lawler reviewed the termination letters for the Three Rivers District for the time period of January 1, 2008 through June 2014. During this period, FedEx terminated 17 employees for falsification, including 13 white employees and 7 employees under the age of 40. (Lawler decl.)

At deposition, plaintiff refers to a White Courier, James Riggs, who plaintiff learned had received a bonus during the 2010 or 2011 holiday season for making 200 stops in one 8 hour day which plaintiff considered humanly impossible. Plaintiff overheard, "through the walls," management saying that this was falsification of the numbers. (pltf. depo. 112-115) Yet, Riggs was not terminated.

Plaintiff's own deposition testimony shows that plaintiff has no personal knowledge of Riggs's alleged misconduct. Therefore, the Court is unable to compare his conduct with that of plaintiff's. Additionally, Mark Smith states that he is not aware of any reports or allegations of falsification against Riggs. Moreover, Smith states that given Riggs's high density route, it could be possible for him to have completed 200 stops in one work day without falsifying delivery records. (Smith decl.)

Notwithstanding, to be considered similarly situated, the individuals must be similar (though not identical) in all relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154

F.3d 344, 353 (6th Cir.1998). Plaintiff presents no evidence concerning Riggs.  In order for Riggs's and plaintiff's conduct to be considered similar, it must have been similar in all relevant respects. *Foster v. Country Fresh, LLC*, --- Fed.Appx. ----, 2014 WL 1465544 (6th Cir. April 16, 2014).  Plaintiff presents no evidence of similar conduct and, in fact, Smith's declaration shows that there was never an allegation that Riggs falsified documents.  Plaintiff's attempt to compare Riggs is based on mere conjecture. Plaintiff fails to establish a prima facie case and defendant is entitled to summary judgment on this basis.

Even assuming he did establish a prima facie case, plaintiff fails to show that defendant's reason for his termination (i.e., deliberate falsification of delivery records) was pretextual. Plaintiff attempts to show that he could have delivered the packages in the time allotted.  But, where defendant has "an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Shazor v. Professional Transit Management, Ltd.*, 744 F.3d 948 (6th Cir. 2014) (citations omitted).  "The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Id.*  The declarations of Smith and Lawler show that defendant conducted a thorough investigation so that the decision to terminate plaintiff was more than reasonably informed. In particular, plaintiff's GAP report was reviewed, plaintiff was given an opportunity to provide a written statement, Clow conducted two test drives of the route, and plaintiff was given a second opportunity to explain his delivery records.

Plaintiff also seems to assert that defendant's reason was pretextual because FedEx's

8

conduct code requires two or three occurrences prior to a termination which plaintiff did not have. But, defendant points out that its Acceptable Conduct Policy states that "progressive discipline is not required and issuance of a Warning Letter is not a prerequisite for termination." (Smith decl. Ex. 3 at 7). The policy also states that falsification of Company documents or records, including delivery records, is a violation that "may result in severe disciplinary action up to and including termination." (*Id.* at 1-2) According to Smith's declaration, he, Clow, and Lawler concluded that the results of the investigation showed that plaintiff's misconduct was a violation of the Acceptable Conduct Policy and was severe enough to warrant termination.

Moreover, the policy also states that employees are subject to termination for falsification if they have received a warning letter for falsification in the previous five years. (*Id.* at 4) Plaintiff had received a warning letter for falsification of Company documents in September 2010. (pltf. depo. Ex. 12) The letter stated that plaintiff knowingly changed his electronic time card. (*Id.*) Plaintiff seems to challenge the basis of this letter, but he acknowledged at deposition that he was responsible for entering his time records on his Powerpad and that he asked a Customer Service Agent to change the codes on his time records for that day. (pltf. depo. 75, 88-93) Even if his present assertions regarding the validity of that letter are accurate, however, plaintiff did not appeal that disciplinary action. As a result, it remained on his disciplinary record. (*Id.* at 95) Thus, when defendant determined in 2012 that plaintiff had falsified his delivery records, a review of his disciplinary record showed that plaintiff had received a disciplinary warning for falsification within the previous five years.

For these reasons, plaintiff fails to establish pretext.

**(2) ADEA**

Where the plaintiff fails to present direct evidence of age discrimination, claims under the Age Discrimination in Employment Act (ADEA) are analyzed using the same burden-shifting framework set forth above.  To establish the prima facie case of age discrimination, plaintiff must show that (1) he was a member of a protected age class (i.e., at least forty years old); (2) he suffered an adverse employment action; (3) he was qualified for the job; and (4) the employer gave the job to a younger employee or he was treated differently than a similarly situated employee outside the protected class. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530 (6th Cir. 2014) (citations omitted); *Lynch v. ITT Educational Services, Inc*., --- Fed.Appx. ----, 2014 WL 3318716 (6th Cir. July 8, 2014).  Defendant must then assert a legitimate, nondiscriminatory reason for its action and plaintiff must establish pretext.

This claim fails for the same reasons stated above. Plaintiff fails to show that younger similarly situated employees were treated more favorably.  And, plaintiff fails to establish pretext.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                         /s/Patricia A. Gaughan  
                                         PATRICIA A. GAUGHAN  
Date:    7/31/14          United States District Judge